IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sabrina S. Anderson,<br><br>    Plaintiff,<br><br>v.<br><br>Quartz Logistics, Inc.,<br><br>    Defendant. | Case No.: 3:24-cv-5256-SAL<br><br>**ORDER** |

Sabrina Anderson brings this action against her former employer, Quartz Logistics, Inc. ("Quartz"), for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), including claims of retaliation, hostile work environment, disparate treatment, and discriminatory discharge. She also asserts claims of employment discrimination under 42 U.S.C. § 1981. Before the court are the parties' cross motions for summary judgment, ECF Nos. 104, 105. United States Magistrate Judge Paige J. Gossett, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(4) (D.S.C.), issued a Report and Recommendation ("Report"), recommending Defendant's motion for summary judgment be granted and Anderson's motion be denied. [ECF No. 124.] Anderson timely objected. [ECF No. 130.] For the reasons below, the court adopts the Report.

I. Background[1]

Anderson alleges that Quartz discriminated against her because of her race and color, permitted a hostile work environment, and retaliated against her. [ECF No. 124 at 1.] She acknowledges that she made mistakes in performing her job duties but insists that her supervisor,

---

[1] The magistrate judge meticulously detailed the record in her Report. [ECF No. 124 at 1–6.] To the extent Anderson objects to the magistrate judge's factual retelling, the court adopts and incorporates only the following summary for purposes of this order and views all facts in the light most favorable to Anderson.

1

Shirley Tolbert ("Tolbert"), created a hostile work environment by criticizing her and involving human resources. *Id.* at 2. Anderson also complains that her first two bonuses were smaller than those given to a more senior coworker. *Id.* Quartz ultimately terminated Anderson's employment when she repeatedly refused to sign a non-disclosure agreement and an updated employee handbook. *Id.* Anderson then filed this action.

## II. Legal Standards

### A. Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* In the absence of *specific* objections this court need not give any explanation for adopting the recommendation. *Field v. McMaster*, 663 F. Supp.

2d 449, 451–52 (D.S.C. 2009). That said, the Fourth Circuit has instructed district courts that *pro se* filings, "however unskillfully pleaded, must be liberally construed." *Noble v. Barnet*, 24 F.3d 582, 587 (4th Cir. 1994).

B. **Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only where the nonmovant's version is supported by sufficient evidence to permit a reasonable jury to find in [the nonmovant's] favor." *United States v. 8.929 Acres of Land*, 36 F.4th 240, 252 (4th Cir. 2022). Conversely, "[w]hen a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Lastly, the court must view facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmovant's favor. *Dean v. Jones*, 984 F.3d 295, 301 (4th Cir. 2021). If the record, viewed this way, gives rise to genuine factual disputes about the claims at issue, then those questions must be resolved by a jury and are inappropriate for summary judgment. *See id.* at 301–02.

### C. Burden-Shifting Framework[2]

A plaintiff alleging unlawful employment discrimination under Title VII may proceed through two avenues of proof. First, she may attempt directly to prove discrimination with direct or circumstantial evidence. Alternatively, when direct proof is lacking, a plaintiff may proceed under the *McDonnell Douglas* burden-shifting framework. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) ("This framework was initially developed for Title VII discrimination cases . . . but has since been held to apply in discrimination cases arising under § 1981 . . . and in retaliation cases under both statutes." (internal citations omitted)). Under this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once a defendant meets this burden by producing evidence revealing a legitimate, nondiscriminatory

---

[2] The court is aware of the developing controversy regarding the *McDonnell Douglas* framework. Justice Thomas has recently questioned the viability of applying the *McDonnell Douglas* burden-shifting framework, particularly at the summary judgment stage. *Hittle v. City of Stockton*, 145 S. Ct. 759, 760–61 (2025) (Thomas, J., dissenting); *Ames v. Ohio Dep't of Youth Servs.,* 605 U.S. 303, 319 (2025) (Thomas, J., concurring). Even more recently, Judge Quattlebaum of the Fourth Circuit Court of Appeals has "join[ed] many other judges and Justices in calling for the clarification, or overturning, of *McDonnell Douglas'* burden-shifting framework." *Hollis v. Morgan State Univ.*, 153 F.4th 369, 395 (4th Cir. 2025) (Quattlebaum, J., concurring). Nonetheless, as Judge Quattlebaum noted, the Fourth Circuit has "often applied *McDonnell Douglas* at summary judgment." *Id.* at 390. Accordingly, under current Fourth Circuit precedent, it is appropriate for the court to apply the *McDonnell Douglas* burden-shifting framework to Anderson's claims. *Cf. Ames*, 605 U.S. at 308 n.2 ("assum[ing] without deciding that the *McDonnell Douglas* framework applies at the summary-judgment stage of litigation").

reason, the *McDonnell Douglas* framework disappears, and the sole remaining issue is discrimination *vel non*. *Id*. at 43.

In other words, if the defendant demonstrates a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was a pretext for discrimination. *Merritt*, 601 F.3d at 294. Accordingly, the plaintiff's burden of proving pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id.*; *see also Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

Ultimately, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. *Reeves*, 530 U.S. at 148 (2000). Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49.

5

### III. Discussion

Anderson asserts three causes of action against Quartz: color discrimination,[3] racial discrimination, retaliation, and hostile work environment under Title VII and 42 U.S.C. § 1981. [ECF No. 1 at 3–4.] The magistrate judge found that each claim fails as a matter of law. [ECF No. 124.] Anderson opposes summary judgment and generally objects to the entire Report. [ECF No. 130.] Because Anderson's objections reference each claim, the court reviews them de novo.

#### A. Facts

Anderson initially objects to the magistrate judge's framing of background facts—arguing that the Report "relies heavily on Defendant's declarations as neutral 'background'" and omits "factual context supported by [Anderson's] record evidence." [ECF No. 130 at 2–9.] Many of her alleged factual disputes are not material to her claims and do not preclude summary judgment.[4]

---

[3] Anderson does not object to the magistrate judge's recommended dismissal of her color discrimination claim under Title VII. Accordingly, the court need not review this claim de novo. *See Field*, 663 F. Supp. 2d 449 at 451 n.1 ("The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made."). That said, even upon a de novo review, the court finds that Anderson's color discrimination claim should fail for the reasons stated in the Report. [ECF No. 124 at 11.] While Anderson claims she was the only Black or African-American employee supervised by Tolbert, nothing in the record suggests that any actions taken by Quartz were motivated by Anderson's skin tone. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002) (explaining that "[c]olor discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual"). Accordingly, Quartz's motion for summary judgment is granted as to this claim.

[4] For instance, Anderson argues the Report acknowledges that she sent an email to Quartz's accounting manager regarding her bonus but failed to note Anderson did not receive a response email. [ECF No. 130 at 5.] Even accepting this factual allegation as true, it has little bearing, if any, on the current issues before the court.

Considering her submissions, the court finds no genuine dispute of material fact. Accordingly, this objection is overruled.

### B. Race Discrimination and Retaliation

#### 1. *Prima Facie* Test (Race Discrimination)

Anderson's claim arises from her termination, compensation disparity, and denial of permission to work from home.[5] *See* ECF No 130 at 10–12; ECF No. 113 at 5–6.

Generally, a plaintiff can demonstrate a *prima facie* test of disparate treatment by showing: (1) the plaintiff is a member of a protected class; (2) she suffered an adverse employment action, (3) she was performing satisfactorily at the time of the adverse employment action, and (4) the circumstances suggest an unlawfully discriminatory motive. *See, e.g.*, *Noonan v. Consol. Shoe Co., Inc.,* 84 F.4th 566, 572 (4th Cir. 2023); *Freeman v. N. State Bank*, 282 F. App'x 211, 216 (4th Cir. 2008). For the adverse employment action element to be met, the employee must show "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

The magistrate judge found Plaintiff's termination and alleged bonus disparity sufficient to meet the *prima facie* test, and the court agrees.[6] [ECF No. 124 at 12–13.]

---

[5] Like the magistrate judge, the court notes that Anderson directs the court to numerous events and occurrences from her employment which she believes were unlawful. While the cited actions above appear to be the focus of her opposition to summary judgment, the court considers all of Anderson's cited actions in addressing each of her claims. [ECF No. 124 at 10–11.]

[6] In her objections, Anderson appears to adopt the magistrate judge's finding on the *prima facie* test. *See* ECF No. 130 at 11 ("Anderson's race-discrimination claim is independently supported by termination and compensation disparity, either of which alone is sufficient to satisfy the adverse-action requirement."); *Id.* ("To the extent Defendant argues that other challenged actions do not independently constitute adverse employment actions, that contention is immaterial.").

### 2. *Prima Facie* Test (Retaliation)

Anderson's retaliation claim rests on her use of certain entrance and exit points at Quartz's facilities and the manner in which disciplinary issues involving her were handled. [ECF No. 130 at 12–17.] The magistrate judge found that these actions were not sufficiently adverse to survive summary judgment. [ECF No. 124 at 13–16.] The court agrees and finds that the alleged conduct is insufficient to establish a *prima facie* case of retaliation.

To make out a *prima facie* case, a plaintiff must show: (1) she engaged in a protected activity; (2) her employer took an adverse action against her; and (3) a causal connection existed between the protected activity and the adverse action. *See Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 574 (4th Cir. 2023). With respect to the second element, the plaintiff must show that the employer's adverse action was objectively material. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In the Title VII context, this requires proof "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The test is an objective one and considers the reactions of a reasonable employee. *White*, 548 U.S. at 68.

Here, the magistrate judge found that neither the reporting of concerns to Anderson's supervisors nor the handling of her use of office entrances met the standard under *White*, concluding that "at most, these are the types of 'petty slights and minor annoyances that often take place at work and that all employees experience,' but do not rise to the level of adverse actions." [ECF No. 124 at 16 (citing *White*, 548 U.S. at 68).] While Anderson challenges this conclusion,

the court agrees that the cited actions cannot support a retaliation claim.[7] General claims of criticism, heightened scrutiny, or rudeness, without more, are not "materially adverse" for purposes of Title VII. *Garrett v. Cape Fox Facilities Servs.*, 2020 WL 265869, at *7 (E.D. Va. Jan. 17, 2020) (finding that work-related criticism and scrutiny do not amount to adverse employment actions); *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (finding allegations that "[a plaintiff] was yelled at for complaining about his discriminatory treatment," criticized for contacting his State Delegates, and threatened with official reprimand if "he sent more complaining e-mails to administrators" were not materially adverse actions). Accordingly, applying the law to the facts, the court thus adopts the reasoning outlined in the Report and concludes that these allegations cannot form the basis of a retaliation claim.

### 3. Legitimate, Nondiscriminatory Motive

Anderson concedes that Quartz has "articulated facially legitimate reasons" for her termination and alleged bonus disparity, however, "disputes that those reasons are genuine and non-pretextual." [ECF No. 130 at 17–19.] The magistrate judge found that Quartz proffered legitimate, nondiscriminatory reasons for both the bonuses awarded to Anderson and her subsequent termination and further determined that Anderson failed to forecast sufficient evidence to demonstrate Quartz's reasons were a pretext for retaliation. [ECF No. 124 at 20.] The court agrees and finds that Anderson has failed to sufficiently show Quartz's stated reasons were pretextual.

---

[7] Anderson argues that the magistrate judge erred by failing to consider her termination and loss of compensation as materially adverse actions for her retaliation claim. [ECF No. 130 at 12 n.12.] That said, the magistrate judge found that Quartz provided legitimate, nondiscriminatory reasons for the bonuses awarded to Anderson and for her termination. [ECF No. 124 at 16–20.] Because the court later agrees with this finding, *see supra* section III.B.3, this argument fails.

For her claim regarding bonus disparity, Anderson generally challenges the legitimacy and application of the bonus criteria, arguing that this dispute precludes summary judgment. [ECF No. 130 at 17–18.] The court finds, however, that Quartz has offered legitimate, non-discriminatory explanations for how bonuses were awarded and therefore Anderson's claim fails. While Anderson initially claimed her bonuses were lower than those of a more senior employee, she has since shifted her comparison to two other employees, Alex Li and Kendhall Lebron. [ECF No. 113 at 14.] As the magistrate judge found, neither Li nor Lebron received higher bonuses than Anderson in any month in which she received a bonus. [ECF No. 124 at 17; ECF No. 105-36 at 4, 7, 8.] Accordingly, the court agrees that there is no factual support for this claim and summary judgment is proper.

Anderson's claim resulting from her termination fares no better. Quartz terminated her employment due to her refusal to sign the updated employee handbook, a bona fide requirement.[8] *See* ECF No. 124 at 17; ECF No. 105 at 11–12. The record reflects that employees were instructed on December 29, 2023, to sign the revised handbook by January 4, 2024. [ECF No. 105-22.] On January 2, 2024, Quartz human resources emailed Anderson directly, asking her to sign the handbook. Anderson responded that "the handbook does not apply to me" and that she did "not feel comfortable signing this document" based on the handling of her retaliation complaints. [ECF No. 105-23.] Accordingly, Quartz's rationale for terminating Anderson's employment appears legitimate and nondiscriminatory.

---

[8] Quartz also claims that Anderson was terminated in part based on her refusal to sign a non-disclosure agreement. *See* ECF No. 124 at 17; ECF No. 105 at 12. Anderson later argued that she was not told she would be terminated for failing to sign the NDA and ultimately offered to sign it. *See* ECF No. 124 at 17; ECF No. 113 at 23. The magistrate judge found this dispute to be immaterial in light of Anderson's refusal to sign the revised handbook. [ECF No. 124 at 18.] The court likewise focuses on the revised handbook justification for termination.

While Anderson challenges the handbook's complaint procedures, these concerns do not render Quartz's stated reason for termination pretextual. *See DeFour v. Webber*, No. 7:22CV00379, 2023 WL 6149279, *13 (W.D. Va. Sept. 20, 2023), *aff'd*, No. 23-7010, 2025 WL 227694 (4th Cir. Jan. 17, 2025) ("[B]ald assertions of retaliatory motive cannot refute evidence of legitimate nondiscriminatory reasons for a defendant's adverse action."); *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 420 (D.S.C. 2014) ("An employer's expectations of its employees are considered 'legitimate' when they are honestly held; whether the employee agrees with those expectations is not the test. . . . As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers.").[9] Accordingly, the court agrees with the magistrate judge that summary judgment is proper on Anderson's discrimination and retaliation claims.

## C. Hostile Work Environment

Anderson argues that her hostile work environment claim should proceed because she has sufficiently shown that, as an African-American employee, she was selectively reported to human resources, criticized in front of coworkers, and subject to heightened scrutiny. *See* ECF No. 130 at 20–22.

Under the *McDonnell Douglas* framework, to establish a *prima facie* case of a hostile work environment, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's protected characteristic; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is

---

[9] Anderson also argues that "[e]nforcing a policy against an employee while simultaneously disregarding its protective provisions is evidence of pretext." [ECF No. 130 at 19–20.] That said, she provides no legal support for this assertion. Accordingly, the court maintains its finding that Anderson has failed to demonstrate pretext.

11

imputable to the employer. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207–08 (4th Cir. 2019); *see also Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (providing that the elements for a hostile work environment claim "are the same under either § 1981 or Title VII"). "A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (internal quotation marks omitted). The magistrate judge found that Anderson failed to meet the second and third elements of the *prima facie* test. [ECF No. 124 at 21.] The court addresses only the second element.

Title VII does not prohibit all verbal or physical harassment in the workplace—it is directed at actions that occur because of one of the protected statuses. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 329 (4th Cir. 2018). "In determining whether offensive conduct can be attributed to discrimination against the employee's race or other protected status, courts must view the behavior in light of the social context surrounding the actions." *Id.*

The court agrees with the judge that Anderson has failed to produce evidence from which a reasonable jury could find any unwelcome conduct was based on her race. *See* ECF No. 124 at 21–22. ("The undisputed evidence shows that Tolbert expressed criticism and issues with at least two of Anderson's non-black co-workers as well, who ultimately chose to resign . . . . Accordingly, no reasonable jury could find that Tolbert singled out Anderson as the only African-American employee or could conclude from this limited evidence that Tolbert's alleged hostile treatment of Anderson was based on racial animus."). While Anderson argues that the magistrate judge's comparator analysis is flawed, ECF No. 130 at 23–24, the court finds that, considering the totality of the circumstances, Anderson has failed to produce evidence that she was targeted due to her

race. *See McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 409 (4th Cir. 2022) (providing that harassment based on race may be inferred when the plaintiff experienced it more often than others of different races or suffered a kind likely to be motivated by race, "[b]ut a plaintiff cannot rely on her own 'conjecture' to impute a racial character to what appears to be neutral harassment"). Summary judgment is warranted.[10]

### IV. Conclusion

After a thorough review of the Report, the applicable law, and the record of this case, the court finds no clear error in the Report. Additionally, the court reviewed de novo the parts of the Report to which Anderson objected. The court hereby **ADOPTS** the Report, ECF No. 124. As a result, Quartz's motion for summary judgment, ECF No. 105, is **GRANTED**. Anderson's claims are dismissed **WITH PREJUDICE**. For these same reasons, Anderson's motion for summary judgment, ECF No. 104, is **DENIED**. Anderson's remaining motions are denied as moot. [ECF Nos. 79, 90, 94, 116, and 119.]

**IT IS SO ORDERED.**

February 27, 2026  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge

---

[10] Because the court finds that Anderson has failed to demonstrate unwelcome conduct that was based on a protected characteristic, it does not reach the magistrate judge's recommendation, nor Anderson's corresponding objections, regarding whether the alleged conduct was sufficiently severe or pervasive to alter Anderson's conditions of employment and to create an abusive work environment. *Timothy v. Kennedy*, No. CV 24-3313-TDC, 2025 WL 3017965, *11 (D. Md. Oct. 28, 2025) ("[T]he Court need not decide whether the negative interactions were sufficiently severe or pervasive to establish a hostile or abusive environment because [Plaintiff] has not alleged facts sufficient to support a plausible claim that the unwelcome conduct was based on sex or national origin.").